UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZIPPORAH FILMS, INC.,

                        Plaintiff,

        - against -

MADISON SQUARE GARDEN, L.P.,
MADISON SQUARE GARDEN CENTER,
INC.,

                    Defendants.

---

06 CV 6451 (DC)

**ANSWER AND COUNTERCLAIMS
OF DEFENDANT MADISON
SQUARE GARDEN, L.P.**

**ELECTRONICALLY FILED**

Defendant Madison Square Garden, L.P. (hereinafter referred to as "Defendant" or "MSG"), on behalf of itself and Madison Square Garden Center (an unincorporated and now defunct division of MSG), by its undersigned attorneys, for its answer to the Complaint ("Complaint") filed by Plaintiff Zipporah Films, Inc. ("Zipporah"), responds as follows:

## NATURE OF THE ACTION

Admit that the parties entered into the "Agreement," a copy of which is attached as Exhibit A to the Complaint; respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in the "Nature Of The Action" paragraph of the Complaint.

## JURISDICTION AND VENUE

1.      Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2.      Admit that MSG has offices in the Southern District of New York and that venue is proper in the Southern District of New York; and, except as so stated, deny the allegations contained in paragraph 2 of the Complaint.

## THE PARTIES

3.    Deny knowledge or information sufficient to form a belief as to the allegations of paragraph 3 of the Complaint.

4.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 4 of the Complaint.

5.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 5 of the Complaint.

6.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 6 of the Complaint.

7.    Deny the allegations contained in paragraph 7 of the Complaint.

8.    State that MSG's New York office is located at Two Pennsylvania Plaza, New York, New York 10121, and, except as so stated, admit the allegations contained in paragraph 8 of the Complaint.

9.    Admit the allegations contained in paragraph 9 of the Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

10.    Admit that Mr. Wiseman met with MSG representatives in 1997, that certain negotiations ensued, and that the Agreement was concluded; respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 10 of the Complaint.

11.    Respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 11 of the Complaint.

12.    Respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 12 of the Complaint.

13. Admit that the documents attached to the Complaint as Exhibits "B" and "C" are MSG documents written by MSG representatives in connection with the Agreement, respectfully refer the Court to Exhibits "B" and "C" for the contents thereof; and, except as so stated, deny the allegations contained in paragraph 13 of the Complaint.

14. Respectfully refer the Court to Exhibit "B" for the contents thereof; and, except as so stated, deny the allegations contained in paragraph 14 of the Complaint.

15. Respectfully refer the Court to Exhibit "B" and "C" for the contents thereof; and, except as so stated, deny the allegations contained in paragraph 15 of the Complaint.

16. Respectfully refer the Court to Exhibit "C" for the contents thereof; and, except as so stated, deny the allegations contained in paragraph 16 of the Complaint.

17. Admit that Plaintiff engaged in filming at Madison Square Garden between February and April in 1998, that a film with a soundtrack was produced as a result thereof; and that MSG representatives interacted with Plaintiff and its agents and/or employees in connection with the filming; respectfully refer the Court to the Agreement and Exhibits "B" and "C" for the contents thereof; and, except as so stated, deny the allegations contained in paragraph 17 of the Complaint.

18. Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 18 of the Complaint.

19. Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 19 of the Complaint.

20. Admit that Mr. Wiseman sent a videotape purporting to be his documentary to MSG for its review and written approval, respectfully refer the Court to the Agreement for the

terms thereof; and, except as so stated, deny the allegations contained in paragraph 20 of the Complaint.

21.    Deny knowledge or information sufficient to form a belief as to the allegations contained in paragraph 21 of the Complaint.

22.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint.

23.    Deny the allegations contained in paragraph 23 of the Complaint.

24.    Admit that certain disputes exist between the parties; respectfully refer the Court to the Agreement; for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 24 of the Complaint.

25.    Admit that certain disputes exist between the parties; and, except as so stated, deny the allegations contained in paragraph 25 of the Complaint.

26.    Deny the allegations of paragraph 26 of the Complaint.

27.    Admit that MSG representatives interacted with Plaintiff in connection with the Agreement; respectfully refer the Court to the Agreement and Exhibits "B" and "C" for the terms and/or contents thereof; and, except as so stated, deny the allegations contained in paragraph 27 of the Complaint.

28.    Admit that certain disputes exist between the parties and that the document attached to the Complaint as Exhibit "E" is an MSG document written by an MSG representative; respectfully refer the Court to the Agreement and Exhibit "E" for the terms and/or contents thereof; and, except as so stated, deny the allegations contained in paragraph 28 of the Complaint.

29.    Deny the allegations contained in paragraph 29 of the Complaint.

30.     Respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 30 of the Complaint.

31.     Respectfully refer the Court to the Agreement for the terms thereof; and, except as so stated, deny the allegations contained in paragraph 31 of the Complaint.

32.     Deny the allegations contained in paragraph 32 of the Complaint.

33.     Admit that MSG sent letters in or about January 2005 to various third parties shown in Zipporah's purported documentary; and, except as so stated, deny the allegations contained in paragraph 33 of the Complaint.

34.     Deny the allegations set forth in paragraph 34 of the Complaint.

35.     Deny the allegations set forth in paragraph 35 of the Complaint.

36.     Deny the allegations set forth in paragraph 36 of the Complaint.

37.     Deny knowledge or information sufficient to form a belief as to Zipporah's agreements with or obligations to third parties; and, except as so stated, deny the allegations contained in paragraph 37 of the Complaint.

38.     Deny the allegations contained in paragraph 38 of the Complaint.

39.     Deny the allegations contained in paragraph 39 of the Complaint.

40.     Deny the allegations contained in paragraph 40 of the Complaint.

41.     Deny the allegations contained in paragraph 41 of the Complaint.

42.     Deny each and every allegation contained in the Complaint that is not expressly admitted herein.

43.     Deny the Plaintiff is entitled to any of the relief sought in the Complaint.

## FIRST DEFENSE

### (Failure to State a Claim)

44.     The Complaint fails to state a claim against Defendant upon which relief can be granted and further fails to state facts sufficient to entitle Zipporah to the relief sought, or to any relief whatsoever.

## SECOND DEFENSE

### (Estoppel)

45.     Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

## THIRD DEFENSE

### (Laches)

46.     Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## FOURTH DEFENSE

### (Unclean Hands)

47.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## FIFTH DEFENSE

### (Failure to Mitigate Damages)

48.     Plaintiff has failed, and continues to fail, to act reasonably to mitigate any damages alleged in the Complaint.  Therefore, Plaintiff is barred from recovering any damages that it could have prevented in the exercise of reasonable care.

## SIXTH DEFENSE

### (Breach of Contract)

49.    Plaintiff's claims are barred in whole or in part on the ground that the acts and omissions of Plaintiff and/or its agents, employees, servants and contractors with respect to the Agreement and the obligations of Plaintiff set forth therein constitute breach of contract.

## SEVENTH DEFENSE

### (Additional Defenses)

50.    Defendant presently has insufficient knowledge and information upon which to form a belief as to whether it has additional, as yet unstated, affirmative defenses available. Defendant reserves the right to assert additional affirmative defenses for which it has developed factual support pending the outcome of discovery or otherwise.

## COUNTERCLAIMS

Counterclaim-Plaintiff Madison Square Garden, L.P. (hereinafter referred to as "MSG") on behalf of itself and Madison Square Garden Center (an unincorporated and now defunct division of MSG), for its counterclaims against Counterclaim-Defendant Zipporah Films, Inc. ("Zipporah"), alleges as follows:

## JURISDICTION AND VENUE

51.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), there being a diversity of citizenship between the parties.  Upon information and belief, the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

52.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York in that MSG has offices in the Southern District of New York, and Zipporah has performed

acts in the Southern District of New York which form the basis for the claims for relief set forth below.

## PARTIES

53.     Counterclaim-Plaintiff Madison Square Garden, L.P. is a limited partnership organized and existing as an entity under the laws of the State of Delaware, and is qualified to do business in the State of New York, having its New York offices located at Two Pennsylvania Plaza, New York, New York 10121.

54.     Upon information and belief, Counterclaim-Defendant Zipporah Films, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts and has its principal offices at One Richdale Avenue, Unit #4, Cambridge, Massachusetts 02140.

## FACTS COMMON TO THE COUNTERCLAIMS

55.     On or about August 11, 1997, MSG and Zipporah entered into an agreement (the "Agreement") pursuant to which Zipporah would be permitted to conduct certain filming activities at the Madison Square Garden Sports and Entertainment Complex in order to produce a documentary motion picture film.  A true and correct copy of the Agreement is attached hereto as Exhibit "1."

56.     Paragraph 8 of the Agreement provided that Zipporah "may be exposed to certain proprietary and confidential information relative to MSG's operations, finances, or otherwise" and that the "the term 'proprietary and confidential information' shall mean any information that is identified as such by MSG or any of its employees."  Paragraph 8 of the Agreement prohibited Zipporah from revealing any "proprietary and confidential information," as defined by MSG, to any third party, "unless and until [Zipporah] has obtained MSG's prior written consent."

57.    On or about November 18, 2004, an MSG representative sent a letter informing Zipporah that the purported documentary contains "proprietary and confidential information." A true and correct copy of the letter is attached hereto as Exhibit "2." As it was entitled to do, MSG demanded that Zipporah "refrain from distributing the film unless and until you have obtained MSG's written consent to utilize such footage in the film in accordance with Paragraphs 8 and 10(c) of our Agreement." Exhibit "2."

58.    Upon information and belief, Zipporah subsequently distributed the purported documentary to various third parties without obtaining MSG's prior written consent.

59.    Upon information and belief, Zipporah also failed to "obtain any necessary consent that may be required by law" from various third parties whose name or likeness is utilized in the purported documentary. Exhibit "1," ¶ 4.

60.    Paragraph 9(a) of the Agreement required Zipporah to indemnify MSG from and against any and all expenses, including attorneys' fees, incurred in an action between MSG and Zipporah "arising out of or in connection with: (i) the act or omission of [Zipporah]" or "(ii) the breach by [Zipporah] of any of [Zipporah's] agreements, covenants, representations or warranties under [the] Agreement." Exhibit "1," ¶ 9(a).

## COUNT I

### (Breach of Contract - Failure to Obtain Prior Written Consent of MSG)

61.    MSG repeats and re-alleges the allegations contained in paragraphs 1-60 of this Answer and Counterclaims.

62.    Counterclaim-Defendant breached the Agreement by its failure to obtain the written consent of MSG prior to submitting the film to various third parties.

63.    As a direct and proximate result of the aforementioned material breaches of the Agreement, MSG has suffered injuries for which there is no adequate remedy at law.

## COUNT II

### (Breach of Contract - Failure to Obtain Any Necessary Consent)

64.    MSG repeats and re-alleges the allegations contained in paragraphs 1-63 of this Answer and Counterclaims.

65.    Counterclaim-Defendant breached the Agreement by its failure to obtain any necessary consent from various third parties.

66.    As a direct and proximate result of the aforementioned material breaches of the Agreement, MSG has suffered injuries for which there is no adequate remedy at law.

## COUNT III

### (Indemnification)

67.    MSG repeats and re-alleges the allegations contained in paragraphs 1-66 of this Answer and Counterclaims.

68.    Counterclaim-Defendant agreed to indemnify MSG from and against any and all expenses, including attorneys' fees, incurred in an action between MSG and Counterclaim Defendant "arising out of or in connection with: (i) the act or omission of [Zipporah]" or "(ii) the breach by [Zipporah] of any of [Zipporah's] agreements, covenants, representations or warranties under [the] Agreement." Exhibit "1," ¶ 9(a).

69.    MSG has incurred and will continue to incur costs and expenses related to this action between MSG and Counterclaim Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for entry of judgment in its favor and against Plaintiff as follows:

a.      Denying all claims and requests for relief in the Complaint and ruling that Plaintiff take nothing from Defendant by this action;

b.      Preliminarily and permanently enjoining Plaintiff from any further disclosures of the purported Documentary, including but not limited to public exhibitions at film festivals, to any third party without Defendant's prior written consent;

c.      Granting such other relief as appropriate to preserve Defendant's rights in connection with the purported documentary;

c.      Awarding Defendant its damages;

d.      Awarding Defendant its costs of suit; and

e.      For such other and further relief as the Court may deem just and proper.

Dated: September 18, 2006          Respectfully submitted,
New York, New York

                        QUINN EMANUEL URQUHART
                        OLIVER & HEDGES LLP

                        Richard I. Werder, Jr. (RW 5061)
                        Robert L. Raskopf (RR 5022)
                        Jonathan D. Marcus (JM 1885)
                        51 Madison Avenue, 22nd Floor
                        New York, New York  10010
                        212.849.7000

                        **ATTORNEYS FOR DEFENDANT**
                        **MADISON SQUARE GARDEN, L.P.**

# EXHIBIT 1



August 11, 1997

Zipporah Films Inc.
One Richdale Avenue
Unit #4
Cambridge, Mass 02140
Attention: Mr. Frederick Wiseman

Gentlemen:

This will confirm our agreement regarding the grant by Madison Square Garden Center, a division of Madison Square Garden, L.P. ("MSG"), to Zipporah Films, Inc. ("Producer") of a limited license to conduct certain filming activities at the Madison Square Garden Sports and Entertainment Complex (the "Building"), upon the following terms and conditions:

1. (a) License. MSG hereby grants to Producer the non-exclusive right and privilege to utilize certain areas of the Building and of the corporate offices of MSG at Two Penn Plaza (the "Offices") at mutually agreed upon times during approximately twelve weeks in February, March and April of 1998, solely for the purpose of filming or videotaping (the "Filming") a documentary film depicting the operations of Madison Square Garden (the "Documentary"), pursuant to the terms set forth herein.

(b) Filming Procedure. Producer represents that the Filming shall not interfere with or impede any of MSG's business operations. MSG shall be entitled to have a representative present at all times during the Filming. All camera placements shall be subject to MSG's approval (which shall not be unreasonably withheld). Producer agrees to comply with any request by MSG that cameras be turned off from time to time, and that specific meetings, activities, events and operations be excluded from the Filming and the Documentary. Producer acknowledges that it may also be required to obtain approval to film on the premises of the Offices from the owner and/or landlord of Two Penn Plaza. MSG agrees to assist in obtaining such approval.

2. Credentials and Equipment. All arrangements for access credentials and where to enter the Building shall be made with MSG's Building Operations Department. Producer hereby agrees that the camera and lights to be used in connection with the Filming shall be hand held, except for occasional use of a camera tripod for support.

Madison Square Garden
Two Pennsylvania Plaza
New York, NY 10121-0091
Tel 212.465.6000

3.   (a)  <u>Limited License</u>.  Producer agrees that any footage resulting from the Filming will be used solely for purposes of including it in the Documentary and in connection with the advertising, promotion and publicity of the Documentary.

(b)  <u>Proprietary Rights</u>.  MSG agrees that Producer shall own, in perpetuity, all copyrights and all other right, title and interest of every kind, in and to the Documentary, including: (i) the right to use solely in the Documentary and in connection with the advertising, promotion and publicity of the Documentary any footage of the Building resulting from the Filming (subject to MSG's approval rights pursuant to Paragraph 10 below); and (ii) the right to exhibit, perform and exploit the Documentary in all media now known or unknown throughout the universe in perpetuity, except as otherwise restricted or provided herein.

4.   <u>Representations</u>.  Producer represents and warrants to MSG that Producer has or shall obtain any necessary consent that may be required by law from any person whose name or likeness is utilized in the Documentary, which consent shall authorize Producer to use such name and likeness in such manner. Producer shall not use the name, logo or proprietary materials of any third party that appear on or in the premises of the Building or at the Offices during the Filming, or otherwise (including, without limitation, any sponsorship signage, without having obtained any necessary consent from such third party.

5.   (a)  <u>License Fee</u>.  MSG agrees to waive its customary license fee for the Filming, and agrees that the license granted hereunder shall be a royalty-free license; provided, however, that Producer represents and warrants to MSG that the Documentary shall not be utilized for commercial purposes, except for exhibition on PBS or other programming networks or exhibition in motion picture theaters or distribution by sale or rental of prints or video cassettes for non-commercial use (i.e., to schools, libraries, etc. and not at 'video stores").

(b)  <u>Expenses</u>.  Producer further agrees to pay to MSG all costs and expenses incurred by it and arising out of the Filming, including, but not limited to, stage crews and electricians as are necessary for the production of the Filming (at MSG's standard rates), provided that MSG will use reasonable efforts to inform Producer of any such anticipated costs and expenses prior to the applicable portion of the Filming.  In addition, if by reason of MSG's collective bargaining agreement with any union, any personnel used during the Filming or any other union personnel are required to be paid additional sums due to the Filming, Producer will reimburse MSG such additional sums for such personnel.

6.  <u>Union Rules</u>.  In no event shall Producer, or any of its agents, employees or contractors take any action or fail to take any action which would or might interfere with or deleteriously affect any existing union jurisdictional arrangement relating to the Building, provided that MSG will use reasonable efforts to inform Producer of any such arrangement prior to the applicable portion of the Filming.

7.  <u>Third Party Rights</u>.  Producer represents and warrants to MSG that Producer's (or its successor's, licensee's or assign's) use of footage resulting from the Filming will not violate the right of privacy or other civil rights or constitute a defamation, libel or slander or otherwise interfere with the rights of any person, firm or corporation.  Producer shall not use the name, logo or proprietary materials of any third party (including, without limitation, any portion of the performance of any musician, artist, athlete, actor or other person appearing in any event being presented at the Building) that appear during the Filming, or otherwise, without having obtained any necessary consent from such third party.

8.  <u>Confidentiality</u>.  The parties acknowledge that in connection with the Filming, and Producer's presence in and around the Building and Offices pursuant to this Agreement, Producer may be exposed to certain proprietary and confidential information relative to MSG's operations, finances or otherwise. For purposes of this Paragraph 8, the term "proprietary and confidential information" shall mean any information that is identified as such by MSG or any of its employees, but shall not include information that (i) was or becomes generally available to the public other than as a result to a disclosure by Producer (or its employees, or representatives); (ii) was available to Producer prior to its disclosure to Producer pursuant to this Agreement; or (iii) becomes available to Producer from a third party source on a non-confidential basis.  Producer hereby agrees that it will not reveal, nor will any of its employees, agents, contractors or representatives reveal, to any person, firm, corporation or other entity any such proprietary or confidential information nor shall Producer or any of its employees, agents, contractors or representatives refer to, include or use in any way any such information in the Documentary (or in any other film or other project), unless and until Producer has obtained MSG's prior written consent.

9.  (a)  <u>Indemnity</u>.  Producer hereby agrees to indemnify, defend and hold harmless MSG, Madison Square Garden, L.P., MSG Eden Corporation, ITT Corporation and Cablevision Systems Corporation, their affiliated entities and their respective officers, directors, employees and agents from and against any and all liabilities, losses, damages, judgments, settlement expenses, claims, costs and expenses whatsoever (including, without limitation, court costs, reasonable attorneys' fees and related disbursements, whether incurred in an action between any such indemnitee and Producer, or between any such indemnitee and

any third party, or otherwise) arising out of or in connection with: (i) the act or omission of Producer, its affiliates or any of their respective officers, directors, employees, agents, contractors, successors, licensees or assigns participating in, appearing in or assisting Producer with the Filming or the Documentary or involved in promoting, advertising, distributing or otherwise exploiting the Documentary; or (ii) the breach by Producer of any of Producer's agreements, covenants, representations or warranties under this Agreement.

(b) <u>Insurance</u>. Producer shall obtain and maintain at all times during the Filming a commercial general liability policy (with contractual liability coverage) covering MSG and its affiliates for bodily injury (including death), with limitations of liability of at least $2,000,000 per occurrence. Producer shall deliver to MSG prior to January 15, 1998 a certificate evidencing such coverage, in form satisfactory to MSG, and reflecting that the following entities have been added as additional insured on the policy: Madison Square Garden Center, Madison Square Garden, L.P., MSG Eden Corporation, ITT Corporation, Cablevision Systems Corporation, Vornado Two Penn Plaza L.L.C., Mendik Realty Company and their affiliates.

10. (a) <u>Trademarks</u>. It is hereby acknowledged and understood that, other than as provided for in Paragraph 10(b) below or otherwise herein, no right, title or interest in or to the use of any name, likeness, trademark, service mark, logo or other identifying mark of Madison Square Garden or any affiliated entity thereof (the "Trademarks") is granted to Producer hereunder. All such right, title and interest in and to any of the Trademarks shall remain the sole and exclusive property of Madison Square Garden or such affiliate, as the case may be.

(b) <u>Use of Trademarks</u>. Producer agrees that neither it nor its successors, licensees or assignees shall use any of the Trademarks in any manner which does or might bring Madison Square Garden, L.P. or any of its affiliates or divisions into disrepute or reflect negatively on them or which does or might adversely affect the validity of any such Trademark. Producer recognizes the great value of the goodwill associated with the Trademarks, and acknowledges that they have acquired secondary meaning in the minds of the public. Producer shall utilize such licensed Trademarks with a high standard of style, appearance and quality so as to protect them and the goodwill associated therewith. Producer shall use the licensed Trademarks solely for the purpose contemplated hereunder, and shall not knowingly permit others to utilize the Trademarks for any purpose without MSG's prior written approval in each instance. Producer may utilize the name "Madison Square Garden" or the name "The Garden" as the title of the Documentary.

4

(c) **Approvals.** Solely for purposes of ensuring compliance with the confidentiality restrictions in Paragraph 8 above and the covenants contained in Paragraph 10(b) and elsewhere in this Agreement, Producer agrees that it shall deliver to MSG a 3/4" videotape of the Documentary for MSG's review and written approval (not to be unreasonably withheld) prior to any PBS or other public exhibition or distribution of the Documentary. MSG shall not be entitled to withhold approval based solely upon artistic or aesthetic matters. MSG shall, at no charge, be entitled to utilize such videotape on or about the premises of the Building, including, without limitation, for purposes of promoting the licensing of the Building to third parties for other film, advertising or related projects, displaying on its Gardenvision Videoscreen or Box Office video monitors or using excerpts of the Documentary during MSG training sessions for employees or during the MSG Tour. Subject to MSG's rights hereunder, Producer shall have all customary editorial control of the Documentary.

11. **Credit.** MSG shall receive a credit on screen in the end titles of the Documentary in substantially the form "Special Thanks to Madison Square Garden."

12. **Miscellaneous.** This letter agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and may not be assigned, directly or indirectly, by either party without the prior written consent of the other party. This letter agreement constitutes the entire agreement between the parties and supersedes any and all prior agreements, oral or written, with respect to the subject matter hereof. No change or amendment of this letter agreement shall be valid unless it is in writing and signed by both parties hereto.

If the foregoing is acceptable to you, please sign where indicated below whereupon the terms hereof shall constitute a binding agreement between us.

Very truly yours,

MADISON SQUARE GARDEN CENTER, a division of Madison Square Garden, L.P.

BY: _Robert Russo_

ACCEPTED AND AGREED:

ZIPPORAH FILMS, INC.

By: _Fredie Wiseman_

# EXHIBIT 2

**ROBERT A. BRANDON**
Senior Vice President
Legal & Business Affairs



November 18, 2004

*VIA FAX 617 864 8006*
*Confirmation By Regular Mail*

Zipporah Films
One Richdale Avenue
Unit #4
Cambridge, Massachusetts 02140
Attention: Frederick Wiseman

     Re: <u>"The Garden" Documentary</u>

Dear Fred:

Thank you for forwarding videotapes of your documentary film entitled "The Garden," which you produced pursuant to our agreement with you dated August 11, 1997.

As I mentioned to you during our recent telephone conversations, Madison Square Garden was surprised to learn of your plans to distribute the film (including the scheduled PBS airing in March, 2005) since more than six years have elapsed since the completion of filming. Without even viewing it, we had significant concerns about whether the film would be dated.

Having now seen the film, we have greater concerns about the confidentiality of many aspects of the Garden's operations that are depicted in the film. Material portions of the footage disclose matters that we believe constitute proprietary and confidential information regarding our operations, security measures, labor relations and other matters.

Accordingly, we must regrettably demand that you refrain from distributing the film unless and until you have obtained MSG's written consent to utilize such footage in the film in accordance with Paragraphs 8 and 10(c) of our agreement.

We also request that you furnish proof of the consents you obtained from Ringling Bros., WWE, the Cat Show, Westminster Kennel Club and all other clients of MSG who might look unfavorably on our granting access to you to film this production absent the appropriate approvals.

Thank you for your understanding in these matters.

                               Sincerely,

                               Robert A. Brandon

RAB/mm
cc:    Barry Watkins

Madison Square Garden
Two Pennsylvania Plaza
New York, NY 10121-0091
Tel 212.465.6320
Fax 212.465.6365

H:\MCCROREM\LETTERS\Fred Wiseman Zipporal Films 11 11 04.doc